UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN KURSCHAT,

    Plaintiff/ Counter-Defendant,

CASE NO: 04-40281

v.

HONORABLE PAUL V. GADOLA
HONORABLE STEVEN D. PEPE

GENERAL BEARING CORPORATION,

    Defendant, Counter-Plaintiff.

_____/

**OPINION AND ORDER
ON
PLAINTIFF'S MOTION FOR LEAVE TO
FILE SECOND AMENDED COMPLAINT (DKT. #38)**

**I.    PROCEDURAL BACKGROUND:**

In his First Amended Complaint, Plaintiff alleged a breach of contract and violation of the Michigan Sales Representatives Commission Act, MCL 600.2961, against his former employer, Defendant General Bearing Corporation, seeking declaratory and monetary relief. In response to Defendant's Motion For Partial Summary Judgment, Plaintiff argued (1) that the allegations in his complaint were broad enough to encompass a claim for pre-termination commissions, (2) that Defendant had been put on notice that these claims were at issue during the course of discovery, and (3) that the claim necessarily survives summary judgment because Defendant did not address pre-termination commissions in its motion. A January 9, 2007, Report and Recommendation determined that Plaintiff had failed to meet the notice pleading requirements of Fed. R. Civ. P.

1

8(a)(2) with respect to a claim for pre-termination commissions, because "[t]here are no specific facts alleged in Count I or elsewhere in the First Amended Complaint that would suggest Plaintiff was complaining about sales commissions he received prior to his termination" (Dkt. #35).  On March 30, 2007, Judge Paul V. Gadola accepted the undersigned's interpretation of the Complaint with respect to the claim for pre-termination commissions (Dkt. #46).

On January 29, 2007, after the issuance of the report and recommendation, but before the district court's order, Plaintiff filed a motion to amend his complaint to add a claim for pre-termination commissions (Dkt. #38). Defendant filed response opposing this motion on February 15, 2007 (Dkt. #41).  Plaintiff submitted a reply on March 1, 2007 (Dkt. #44). The motion to amend was referred to the undersigned on April 5, 2007, for hearing and determination pursuant to 28 U.S.C. § 636 (B)(1)(A).  A motion hearing was held on May 29, 2007 (Docket Minute Entry, 05/29/2007).

Following the telephonic hearing on May 29, 2007, the Defendant was permitted to file a supplemental brief on the issue of futility of the pre-termination claim, and Plaintiff was permitted to submit a response.  Plaintiff was also ordered to provide a list of particulars regarding the alleged breach relating to pre-termination commissions to facilitate the analysis of possible prejudice by determining the nature and scope of discovery likely needed if the amendment is allowed. The Court sought information from Plaintiff regarding specific promises made by Defendant, as well as specific instances of violation of these promises.

Defendant filed its supplemental brief on the issue of futility on June 12, 2007 (Dkt. #51), to which Plaintiff filed a response on June 26, 2007 (Dkt. #53).  Plaintiff submitted a list of particulars on June 14, 2007 (Dkt. #52), and Defendant submitted a reply to Plaintiff's response

2

on June 28, 2007 (Dkt. #54).

II.  DISCUSSION

   A.   Standard

Federal Rule of Civil Procedure 15 requires that, permission to amend a pleading "shall be freely given when justice so requires."  "In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Whether a proposed amendment is "futile" is determined, not by whether the amendment ultimately would be dismissed upon a motion for summary judgment, but rather by determining if it could withstand a motion to dismiss for "failure to state a claim for which relief can be granted" under Fed. R. Civ. P. 12(b)(6).[1]

The Sixth Circuit has stated that mere delay is not reason enough to deny a motion to amend.

> To deny a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). The *Moore* case emphasizes the need for the district court to give reasons for its decision, and the importance of naming prejudice to the opponent. The court noted that "'delay alone, regardless of its length is not enough to bar it [amendment] if the other party is not prejudiced.'" *Moore*, 790 F.2d 557, 560 (quoting 3 Moore's

---

[1]*Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 421 (6th Cir. 2000):

> The test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss.

3

Federal Practice, ¶ 15.08 at 15.76).

*Duggins v. Steak "N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). Other circuit courts have established the same principle, *see e.g.*, *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3rd Cir. 1984) (delay alone is an insufficient ground upon which to deny motion to amend complaint; rather, touchstone is whether nonmoving party will be prejudiced if amendment is allowed); *National Bank of Washington v. Pearson,* 863 F.2d 322 (4th Cir. 1988) (delay alone is not sufficient reason to deny party leave to amend its pleading); *Mercantile Trust Co. Nat. Ass'n v. Inland Marine Products Corp.*, 542 F.2d 1010 (8th Cir. 1976) (mere delay is not reason in and of itself to deny leave to amend; there must be found some prejudice which would result to others if leave were to be granted), *Howey v. U.S.*, 481 F.2d 1187 (9th Cir. 1973) (unless undue prejudice to opposing party will result, a trial judge should ordinarily permit a party to amend its complaint).

**B.     Analysis**

Currently, the law of the case is that Plaintiff did not plead facts sufficient to sustain a claim for pre-termination commissions. Therefore, the issue of whether Defendant had notice of the pre-termination claim for commissions is not currently before this Court. Defendant argues that the motion should be denied for undue delay, undue prejudice and futility.[2]

The allegations that form the basis for Plaintiff's claim for pre-termination commissions are as follows: Plaintiff and Defendant agreed in November 2001, pursuant to a proposal by Plaintiff, to lower Plaintiff's commission rate as specified in his original employment contract, in

---

[2]Defendant raised the undue delay and undue prejudice arguments in its first response to Plaintiff's motion (Dkt. #41) and raised the futility argument in a supplemental brief after the motion hearing (Dkt. #51).

exchange for allowing Plaintiff to enjoy a new title and greater responsibilities. Plaintiff alleges that Defendant lowered the commission rate and changed Plaintiff's title, but failed to keep its other promises under the proposal. Therefore, Plaintiff claims that he should have been paid under the original employment agreement, under which he would have been paid commissions at a higher rate. Plaintiff also alleges that Defendant improperly withheld sales commission on certain pre-termination sales, because Defendant deemed the sales unprofitable.

The language that Plaintiff seeks to add would become paragraph 10 of Count One of the complaint:

> 10. Defendant has breached the employment agreement between the parties by failing to pay pre-termination and post-termination sales commissions to Plaintiff pursuant to the agreement.

(Exhibit L, Dkt. # 38.)

Therefore, this Court must determine whether Plaintiff's motion to amend would cause undue prejudice or would be futile.

1. **Futility:**

Defendant argues that the proposed amendment to the complaint would be futile, because (1) Plaintiff is equitably estopped from making a claim; and (2) under the holding of *Kelley-Stehney & Associates, Inc. v. MacDonald's Industrial Products, Inc.*, 265 Mich. App. 105 (2005), Defendant was obliged only to pay commissions according to the schedule specified in the modified November 2001 agreement between the parties (Dkt. #51). Plaintiff does not distinguish its case from *Kelley-Stehney*, but counters that the amendment would not be futile, because the November 2001 agreement between the parties was an "accord" that was never "satisfied." Therefore, the original contract remained unaltered, and Plaintiff was entitled to the

commissions specified in the original schedule (Dkt. #53).[3]

At the motion hearing, Plaintiff cited *Quality Products & Concepts v. Nagel Precision, Inc.*, 469 Mich. 362 (2003), to support his position that silence and a pattern of conduct cannot amend a sales agreement. Defendant has argued that *Kelley-Stehney* distinguishes *Quality Products*, and is the more appropriate authority in this case. Defendant adequately summarized the facts underlying *Kelley-Stehney* when it argues:

> In *Kelley-Stehney*, the parties entered into a manufacturer's agreement by which plaintiff would receive a three percent commission on its sales. Subsequently, defendant orally proposed to extend the contact [sic] on the condition that plaintiff's commissions would decrease on a sliding scale. *Id.* at 107. Pursuant to the oral agreement, defendant paid plaintiff decreased commissions over the next three years. *Id.* After defendant terminated the contract, like here, plaintiff sued defendant, arguing that it should have received commissions at a higher percentage rate as per the original agreement between the parties. *Id.* The Court rejected plaintiff's claim, concluding that plaintiff assented to lower commissions. *Id.* at 119.

The appeals court then held:

---

[3] Plaintiff's argument regarding accord and satisfaction fail to state an affirmative claim because under Michigan case law "accord and satisfaction" is an affirmative defense to a legal claim. *Faith Reformed Church of Traverse City, Michigan v. Thompson*, 248 Mich. App. 487, 491 (2001), citing *Nationwide Mut. Ins. Co. v. Quality Builders, Inc.*, 192 Mich. App. 643, 646 (1992). In addition, to prove the existence of an accord and satisfaction, a *defendant* must show (1) a good-faith dispute of (2) an unliquidated claim of the plaintiff, (3) its conditional tender of money in satisfaction of the claim, and (4) the plaintiff's acceptance of the tender (5) while fully informed of the condition. *Faith Reformed Church of Traverse City, Michigan,* 248 Mich. App. at 492-93, citing *Nationwide Mut. Ins. Co.*, 192 Mich. App. at 647. In this case, Plaintiff has never argued that there was a good faith dispute over an unliquidated claim of Defendant. Rather, Plaintiff himself presented the proposal under which he would exercise greater control over his division, in exchange for receiving a lower, locked-in commission rate from the Defendant. The proposal served to modify the previous agreement, and did not resolve, release or satisfy the original agreement. Any funds paid by Defendant were not to satisfy a dispute, but commissions for services rendered by Plaintiff. Therefore, accord and satisfaction is not a theory available to Plaintiff in this case.

> Unlike the contract in *Quality Products & Concepts*, the MRA does not contain an antiwaiver provision. Further, defendant's proofs do not rest on the mere fact that plaintiff knew that defendant was paying plaintiff commissions inconsistently with the MRA agreement but remained silent. The evidence shows that plaintiff not only cashed the commission checks that paid reduced commissions under the DLO agreement, but Stehney orally agreed to the terms of the DLO agreement because he did not want defendant to terminate the agreement. By these actions, plaintiff affirmatively waived the written modification clause of the MRA and accepted the oral DLO agreement as proposed by defendant.

*Kelly-Stehney*, 265 Mich. App. at 121 (footnote omitted).

Yet, the present case is distinguishable from the above-cited case. First, in *Kelley-Stehney*, the plaintiff disputed that his employment relationship was governed by the second agreement, although the defendant orally proposed and the plaintiff orally agreed to lower commission rates that decreased on a sliding scale, and plaintiff cashed the commission checks that were calculated at a lower rate. In this case, Plaintiff Kurschat is alleging that, although he entered into a second agreement that modified his commission schedule, Defendant did not abide by the terms of the second agreement, and thus he should not be bound by its lower commission rate. Plaintiff Kurschat did not orally agree to the non-performance of Defendant under the November 2001 proposal, whereas the plaintiff in *Kelley-Stehney* did orally agree to the terms of a new agreement with a lower commission in order to extend the term of the contract, and he did not allege that the new agreement had been breached by defendant. *Kelley-Stehney* does not meet the Rule12(b)(6) standard for a dismissal that Plaintiff's could prove no facts entitling him to pre-termination commissions. Thus, *Kelley-Stehney* does not demonstrate that Plaintiff's proposed amendment would be futile under Rule12(b)(6).

Similarly the principle of equitable estoppel would not render Plaintiff's claim futile under Rule12(b)(6). "The principle of estoppel is an equitable defense that prevents one party to

7

a contract from enforcing a specific provision contained in the contract." *Morales v. Auto-Owners Ins. Co.*, 458 Mich. 288, 295 (1998). For equitable estoppel to apply, Defendant must establish (1) that Plaintiff's acts or representations induced Defendant to believe that the November 2001 agreement was in effect at the relevant times in the employment relationship, (2) that Defendant justifiably relied on this belief, and (3) that Defendant was prejudiced as a result of this belief. *See Morales*, 458 Mich. at 296-97. These are largely questions of fact, particularly with respect to the issues of reliance and prejudice, considering Plaintiff's allegations that Defendant did not change anything in reliance on the November 2001 agreement. Thus, until disputed issues of fact are resolved, it cannot be said that Plaintiff's pre-termination commissions claim would be defeated by a detrimental reliance and equitable estoppel defense. Thus, this equitable estoppel argument does not warrant dismissal under the standards of Rule 12(b)(6), and thus cannot be used to demonstrate futility to defeat the proposed amendment.

2. **Undue Delay and Prejudice:**

Defendant argues that it will suffer undue prejudice as a result of the motion being granted:

> General Bearing would be greatly prejudiced by Plaintiff's proposed amendment since discovery has already closed and the dispositive motion deadline has past. Moreover, even if these deadlines were extended to provide General Bearing an opportunity to conduct limited discovery and prepare a motion on Plaintiff's new proposed claim for pre-termination commissions, General Bearing would face needless additional costs of re-deposing Plaintiff, propounding another set of written discovery requests and engaging in another round of motion practice. These are expensive activities that General Bearing has already conducted and should not have to again conduct simply because Plaintiff is trying to reinvent his cause of action. Additionally, Plaintiff has destroyed certain evidence in this case which General Bearing would not have the benefit of utilizing. (*See e.g.*, Doc. No. 26, Brief in Support of General Bearing's Motion For Partial Summary Judgment, pp. 8-10).

8

(Dkt. #41, p. 7.)

Plaintiff argued in his reply that Defendant cannot demonstrate that prejudice would result if the amendment is allowed (Dkt. #44, p. 4).

> . . . Defendant cannot demonstrate any unfair prejudice that will result if the amendment is allowed. Defendant has already conducted full discovery concerning the claim for pre-termination sales commissions. Defendant sent interrogatories to Mr. Kurschat concerning his damage claims. Mr. Kurschat provided detailed interrogatory responses identifying the basis of his claim for pre-termination sales commissions and also provided a detailed calculation of the amount of pre-termination commissions he was seeking. Defendant's counsel also questioned Mr. Kurschat about his claim for pre-termination sales commissions during his deposition. Defendant was afforded an opportunity to conduct full discovery relating to Mr. Kurschat's claim for pre-termination commissions, and did in fact conduct such discovery. Defendant was fully aware of the claim for pre-termination sales commissions and will not be unfairly surprised if a trial is conducted in relation to that portion of Mr. Kurschat's claims.

(Dkt. #44, p. 4.) Plaintiff is essentially arguing that Defendant had actual notice of the claim, even if Plaintiff's putative claim in its First Amended Complaint for pre-termination commissions was not allowed for Plaintiff's failure to meet the notice pleading requirements of Rule 8(a)(2).

To facilitate the analysis of possible prejudice and the nature and scope of discovery likely needed if the amendment is allowed, the Court ordered Plaintiff to provide a list of particulars regarding the alleged breach relating to pre-termination commissions.

> The Court and Defendant need to know the nature of specific things that are alleged to have been promised by Defendant and specific instances of violation of these promises, including dates and actions or inactions of Defendant.

(Dkt. #50.) It is undisputed that Defendant paid Plaintiff at a lower rate commission rate as agreed upon by the parties under the November 2001 agreement, but "Plaintiff's List of Particulars Regarding Claim for Pre-Termination Sales Commission" provides limited additional

9

information about specific things alleged to have been promised by Defendant that were never carried out.

Exhibit G to Plaintiff's list contains the November 2001 proposal that Plaintiff drafted for approval by Defendant, in which Plaintiff agreed to accept a lower commission rate in exchange for certain modifications in his job title and responsibilities. The text of the proposal follows:

PROPOSAL:

1. ELIMINATE FUTURE AGREED COMMISSION INCREASES.
   SAVING OVER $50,000 PER YEAR.

2. PROVIDE MORE DECISION MAKING RESPONSIBILITY AND INPUT TOWARDS AUTOMOTIVE RELATED BUSINESS

   A. DIRECTOR OF AUTOMOTIVE
      - INCREASE CUSTOMER CONFIDENCE IN ABILITY TO ACCOMPLISH REQUIRED TASKS

   B. REVIEW AND DISCUSSION OF QUOTES BEFORE SENDING
      - AVOID LAST MINUTE SUBMISSIONS
      - PROVIDE BETTER STRATEGIC PLANNING
      - OBTAIN AWARENESS TOWARD PROFITABILITY

   C. HANDLE ANNUAL CUSTOMER NEGOTIATION
      - WORK DIRECTLY WITH BUYER TO SEEK "BEST DEAL"
      - SUBMIT NEGOTIATIONS FOR APPROVAL

   D. DIRECT INPUT FOR ALL AUTOMOTIVE RELATED ITEMS BEING HANDLED BY OTHER SALES PERSONNEL
      - PROVIDE UNIFIED AND COHESIVE EFFORTS

(Plaintiff's List of Particulars Regarding Claim for Pre-Termination Sales Commission, Dkt. #52, Exhibit G.) Exhibit C contains an excerpt from the deposition of Plaintiff, in which he recounts the agreement of then-President of General Bearing, David Gussack, to his proposal.

> Q. What was Mr. Gussack's response to this proposal? First, of all, let's start was it an oral response or was it a written response?
> A. It was an oral response.

> Q. Okay, what was his oral response to this proposal?
> A. He agreed. He agreed that I did do significant things to help the company. He did agree that we should have a review of the quotes before the end all deadline [sic] and the time to send to the customer. He did agree that I could handle the annual customer negotiations, and he did agree that I would have direct input for all automotive related items. He agreed and thought it was a good proposal.

(Dkt. #52, Exhibit C). Plaintiff later in the deposition describes the breach of the terms of the proposal:

> Q. . . . I'm going to ask you to try to explain in your own words what is the basis for your claim that General Bearing breached an employment agreement with you?
> A. The basis is two fold. One, there was an agreement to accept lower commissions, and again I already explained this, but I'll reiterate. To accept lower commissions for more control in the automotive sales and more control in the automotive operations, including a title change to director of automotive. And in exchange I agreed to accept lower commission structure for these greater increased control in the automotive operations. And General Bearing, while they quickly and readily reduced my commission rate, merely changed the title on my business cards. However, during company wide communication, introductions at customers and within our open sales force, I was introduced as account manager which highly undermined the effectivity of actually working as a director.
>    Also, in addition to undermining the actual control and direct input to all the automotive operations which I was seeking, I didn't have the direct input for quotes for other people and giving quotes to other automotive operations. I didn't have direct input into hiring as far as hiring people that would have been directly related to the automotive operations, and in effect, the agreement was breached because all they did was change a simple hollow title but didn't change the actual part of the agreement which was to give me more control and direct input...

Dkt. # 52, Exhibit C, pp. 89, 227-28 . Plaintiff also argues, without citing to the record or to any material obtained through discovery, that:

> There are several additional examples of Defendant's failure to live up to its obligations under the November 2001 proposal. For instance, Defendant hired, without Plaintiff's input or knowledge, a sales representative to handle Defendant's automotive sales with Visteon China. Defendant took certain automotive accounts (including the Impco account) away from Plaintiff and assigned them to other

11

> employees. Defendant's employees continued to provide quotes to automotive companies with [sic?] Plaintiff's input or review. And Defendant's executives continued to introduce Plaintiff at meetings as an Account Executive, rather than as Defendant's Director of Automotive. Throughout the relevant time period Mr. Kurschat lodged numerous verbal complaints with Defendant's successive Presidents, David Gussack and Tom Uhlig, but the complaint [sic] were ignored.

Dkt. # 52, p. 5. Notably, neither Plaintiff's November 2001 proposal nor his testimony specifies that Defendant promised that Plaintiff would have the authority to hire or fire employees within the automotive division or that Defendant relinquished its authority to take any automotive accounts away from Plaintiff.

Finally, Plaintiff also alleges that he is owed commissions for his sales to Visteon Germany, where he sold products at a loss, the company deemed the sales unprofitable, and he was not paid commissions on those sales (Dkt. # 52, Exh. H.)

Plaintiff has failed to provide any dates, and has not been specific in describing the actions or inactions by the Defendant breaching the terms of the November 2001 proposal, with the following explanation:

> With regard to specific dates, since Defendant **never** implemented all of the provisions of the November 2001 proposal, Plaintiff is unable to provide specific dates when Defendant failed to act. Nevertheless, Defendant breached the agreement between the parties every time that it made a sales commission payment to Mr. Kurschat at the reduced rates.

(Dkt. #52, p. 5.) Furthermore, Plaintiff argues that "Defendant has never alleged, nor provided any evidence, that it fulfilled any [sic] its obligations to Mr. Kurschat." (Dkt. #52, p. 6.) First, the November 2001 agreement would not be breached by Defendant by its making payments to Mr. Kurschat at the reduced rates, but only by its failure to abide by its reciprocal promises made to get Plaintiff to agree to this lower commission rate. Further a defendant facing a claim of breach of contract for pre-termination commissions does not bear the burden of proving that it

12

fulfilled its contractual obligations, because it is Plaintiff's burden to prove that Defendant did not do so in order to establish a breach of contract. Furthermore, although Plaintiff claims that he cannot name dates because Defendant never implemented any terms of the proposal, if most of the discovery on the new claim has already been done so that little more is needed, Plaintiff could have summarized in its list of particulars:

- specific instances in which Defendant did not have an opportunity to review quotes before deadlines, including the dates, or approximate dates, on which this occurred and the persons involved

- specific instances in which someone other than Plaintiff handled the annual customer negotiations, including the dates, or approximate dates, on which this occurred and the persons involved

- evidence of Defendant having promised to give Plaintiff input into hiring in the automotive department, and specific instances when this promise was breached, including dates, or approximate dates, on which this occurred and the names of persons involved

- evidence that Defendant promised to refrain from taking away any automotive accounts from Plaintiff, and specific instances when this promise was breached, including dates, or approximate dates, on which this occurred and the names of persons involved

- specific instances in which Defendant introduced Plaintiff as an "Account Executive" at meetings instead of "Director of Automotive," including dates, or approximate dates, on which this occurred and the names of persons involved

- specific instances in which Plaintiff complained to the Defendant's President, the subject matter of those complaints, and dates, or approximate dates, on which this occurred

It is not enough for Plaintiff to summarily argue that Defendant never complied with the agreement, and that this justifies the absence of any discrete and concrete examples of Defendant's failure to comply. If in fact Defendant never complied with the November 2001 proposal, Plaintiff should be able to point to numerous examples of Defendant's breach of that agreement. Plaintiff's failure to proffer such evidence in its list of particulars reflects that

13

Defendant would be subjected to extensive further discovery relating to what likely would be highly contested facts about the events alleged. (For example, Plaintiff alleges that he made repeated complaints to his superiors about not being giving greater responsibility, whereas Defendant denies that Plaintiff ever submitted any complaints.)

Although Plaintiff's claim for pre-termination commissions would not be subject to dismissal under Rule 12(b)(6) for futility, Plaintiff has failed to proffer enough evidence within materials that have already been discovered to demonstrate that allowing this amendment would not require extensive additional discovery to support this claim. This need for extensive additional discovery is highlighted by Plaintiff's argument that he could not specify *any* dates on which the contract had been breached, because it was being breached all along.

Defendant, in order for Plaintiff to adequately defend against this new claim, would have to engage in discovery on myriad issues, like, for example: when, under what circumstances, and at whose direction was Plaintiff denied the opportunity to review and discuss quotes before sending customers; when, under what circumstances, and at whose direction was Plaintiff denied the opportunity to handle annual customer negotiations, when, under what circumstances, and at whose direction was Plaintiff denied the opportunity to provide direct input for all automotive related items, etc.

Discovery concluded in this case on October 31, 2005, and the cut-off date for dispositive motions was on December 30, 2005. Petitioner's motion to amend was filed on January 29, 2007, more than one year later. In claims involving a dispute from and following the November 2001 agreement, this additional year's delay will contribute to greater failures of witnesses' memories and possibly also record availability adding to the burdens of the substantial discovery

that still would need to be undertaken.

> At least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree. *Moore*, 790 F.2d at 560 (citing with approval *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15 (1st Cir. 1979)). *See also Campbell v. Emory Clinic*, 166 F.3d 1157 (11th Cir. 1999); *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 157 F.3d 956 (2d Cir. 1998); *Ferguson v. Roberts*, 11 F.3d 696 (7th Cir.1993); *Averbach v. Rival Mfg. Co.*, 879 F.2d 1196 (3rd Cir. 1989).

*Duggins v. Steak "N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

The nature of the pre-termination claim would require Defendant to prepare a new defense that would be based on facts that are largely distinct from the facts on which it based its defense to Plaintiff's claim for post-termination commissions. Considering that Plaintiff's motion to amend has come more than one year after the cut-off for dispositive motions, the lack of discovered material to support Plaintiff's claim, and the need for extensive, additional discovery that would arise if the motion were granted, Plaintiff's motion should be denied for the undue delay and actual prejudice to Defendant in allowing the amendment.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion to Amend the Complaint (Dkt. #38) be DENIED.

Date: July 19, 2007  
Flint, Michigan

s/Steven D. Pepe  
UNITED STATES MAGISTRATE JUDGE

15

**CERTIFICATE OF SERVICE**

       I hereby certify that on <u>July 19, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system, which will send electronic notification to the following: <u>Kevin P. Albus, Randall J. Gillary, Robert C. Ludolph, James D. Vande Wyngearde,</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>not applicable</u>.

                                            <u>s/James P. Peltier</u>
                                            U.S. District Court
                                            600 Church St
                                            Flint, MI 48502
                                            810-341-7850
                                            pete_peltier@mied.uscourts.gov